IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GAEDEKE HOLDINGS VII LTD and GAEDEKE OIL & GAS OPERATING, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. CIV-11-0649-F |
| TODD BAKER; BAKER PETROLEUM AND INVESTMENTS, INC.; and LANDON SPEED, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER re: ATTORNEYS' FEES

**I. Introduction.**

On November 1, 2019, the court heard evidence and argument on the issues of attorneys' fees and taxable costs. The court had previously determined that plaintiff, as the prevailing party, is entitled to recover reasonable attorneys' fees. By this order, the court determines the amount of the attorneys' fees to be awarded to the plaintiff.[1] The remaining issues as to taxation of costs will be addressed in a separate order.

The court provided a fair amount of guidance as to its approach to the fee issues in its August 13, 2019 order. Doc. no. 896. The court provided further guidance in its preliminary comments at the November 1 hearing, particularly on the question of the extent to which estimation is permissible in evaluating the various

---

[1] The award goes to the plaintiffs collectively. For simplicity, the court refers to plaintiffs in the singular.

components of a fee award. Those comments–made for the benefit of the parties and a reviewing court–will not be repeated here, but they remain relevant to the court's determinations.

**II. Approach to setting the fee to be awarded.**

In setting a fee to be recovered pursuant to statutory entitlement in a diversity case governed by Oklahoma law, the beginning point is the determination of the lodestar fee. The lodestar fee is the dollar amount resulting from multiplication of the hours reasonably devoted to the case by a reasonable hourly rate. Then, depending on case-specific factors, such as whether a fee enhancement is appropriate as a result of the application of the Burk factors, whether there were some non-fee bearing claims in the mix, and whether work was performed relating to parties other than the party targeted by the fee application, the court must consider whether and to what extent the lodestar fee should be adjusted to arrive at a final fee award. The court concludes that the facts of this case require that the analytical process proceed as follows:

A. Determine the lodestar fee. The determination of the hours reasonably spent requires scrutiny of the services rendered by three law firms and dozens of lawyers and paralegals. An adjustment will be required for duplication of effort. The determination of the reasonable hourly rates is somewhat less complicated.

B. Determine whether a *Burk* enhancement is appropriate. It is not.

C. Apportion to eliminate services relating exclusively to other defendants. On this issue, some estimation will inevitably be required. Uncertainties resulting from block billing or otherwise uninformative timekeeping practices will be resolved against the plaintiff, as the party with the burden of proof on fee issues.

D. Apportion to eliminate services relating to non-fee bearing claims. Again, some estimation will be required. And, again, uncertainties will be resolved against the plaintiff.

E. <u>Adjust to arrive at a final fee award which bears some reasonable relationship to the amount in controversy and the amount of the recovery</u>. This is the wild card (in the sense that it is more subjective than any other factor), and potentially the largest adjustment.

**III. Application of the controlling principles.**

After careful consideration of the controlling principles, as discussed in this order, in the August 13 order and at the hearing, the court concludes that plaintiff should be awarded an attorneys' fee recovery in the amount of $106,992, determined as set forth in the following table and as further explained below.

Fee Analysis

| # | Item | | Amount |
|---|---|---|---|
| 1 | Fee sought in motion | | |
| | | Crowe Dunlevy | 1,537,288 |
| | | Meyer, Leonard | 655,295 |
| | | Mahaffey & Gore | 111,580 |
| | | | 2,304,163 |
| 2 | Lodestar per Darrah | | |
| | | Crowe Dunlevy | 892,750 |
| | | Meyer, Leonard | 555,745 |
| | | Mahaffey & Gore | 108,912 |
| | | | 1,557,407 |
| 3 | Deduction for lack of invoices | | (92,915) |
| | | | 1,464,492 |
| 4 | Back out travel and other expenses* | | (26,427) |
| 5 | Adjusted lodestar | | 1,438,065 |
| 6 | 7 percent reduction re: other defendants | | 0.93 |
| | | | 1,337,400 |
| 7 | 20 percent reduction re: non-fee claims | | 0.80 |
| 8 | Lodestar after apportionments | | 1,069,920 |
| 9 | Adjustment per Spencer, SW Bell, etc. | | 0.10 |
| 10 | Fee to be awarded | | 106,992 |
| 11 | Ratio of fee award to judgment | | 2.67 |

*Darrah report, ¶¶7.1(10), 7.2(1) and 7.3(11)

3

A. <u>Determining the lodestar fee</u>. The court starts with the lodestar proposed by Mr. Darrah, plaintiff's expert. (Mr. Chilton, defendants' expert, used the same starting point.) In arriving at his lodestar, Mr. Darrah made some very substantial adjustments to arrive at his estimate of the time reasonably devoted to the matter, which is the first of the two elements of the lodestar equation. Mr. Chilton took Mr. Darrah's lodestar ($1.56 million) and further reduced it to eliminate dollar amounts not supported by invoices ($92,915), to reduce the hourly rates ($156,490 reduction) and to eliminate more time attributable to duplication of effort than was eliminated by Mr. Darrah ($155,740.70 reduction). Expenses included in Mr. Darrah's lodestar fee should also be eliminated, because the court has concluded that expenses not taxable as costs are not recoverable. Hence, line 4 on the table.

As for the time reasonably devoted to the matter, the court concurs with Mr. Darrah's noticeably rigorous analysis, as well as the outcome of that analysis. And the hourly rates are reasonable. At the hearing, a fair amount of attention was paid to the premium rate charged by Mr. Meyer. But it turns out that the effective rate charged by Mr. Meyer was $335.93, which, for an attorney of Mr. Meyer's skill and stature, is well within the reasonable range in this legal community.

B. <u>Determining whether a *Burk* enhancement is appropriate</u>. None is sought in this case and none is appropriate.

C. <u>Apportionment to eliminate services relating exclusively to other defendants</u>. Obviously, a significant element of estimation is required here. This estimate is made more difficult by the fact that the undersigned is new to this case, and does not have the benefit of having presided over the two jury trials, let alone the massive amount of motion work. That said, on the basis of the court's careful review of the fee-related record before it, taken together with the evidence and arguments at the hearing, the court finds that relatively little of the work of plaintiff's attorneys and their paralegals related exclusively to defendants other than the

defendants targeted in this fee application. The other defendants did file numerous motions, briefs and other submissions. Plaintiff was required to respond to them, and the time required to do that should not be charged to these defendants. But work relating only to other defendants was not a large fraction of all of the work required to bring this case to a final judgment.

Mr. Darrah's proposed adjustment for work relating to other defendants appears to amount to about four percent. *See*, doc. no. 898, ¶¶ 7.2 (5) and 7.3 (8). The court's estimate is higher–seven percent, as set forth in the above table (line 6).

D. <u>Apportionment to eliminate services relating to non-fee bearing claims</u>. Six years ago, defendants Landon Speed and Jim Ashford argued that "[t]he foundation of all of Plaintiffs' claims is the contention that the Defendants misappropriated a sales brochure."[2] Doc. no. 474, at 1. The court agrees that the center of gravity of plaintiff's case is the misappropriation of trade secrets. The court's review of the fee-related record (with the benefit of the parties' presentations at the hearing) persuades the court that the factual side of plaintiff's trade secrets claim (*e.g.* the evidence that had to be marshalled and presented at trial) overlapped very substantially with the facts relevant to plaintiff's other claims. The court will not go so far as to say, as Mr. Darrah has suggested, that proving the trade secret claim "incidentally proved other causes of action," doc. no. 898, at 5, but the facts that added up to a trade secret claim in this case certainly did encompass the vast majority of the facts underlying the other claims.

There is less overlap on the legal side of the case (*e.g.*, matters such as legal research, motion work, preparation of proposed jury instructions, and kindred legally-oriented activities). Theories of recovery other than misappropriation of

---

[2] This passage is misquoted in Mr. Darrah's report. Doc. no. 898, at 4. The court does not condone the misquotation, but it is not material to the court's analysis.

trade secrets–for instance, Lanham Act and piercing the corporate veil–required more than a little research and writing. This is where significant apportionment is called for, because the clearly distinctive legal bases for the non-fee bearing claims required work that should not be charged to these defendants. Mr. Darrah proposes no apportionment for non-fee bearing claims. Doc. no. 898, at 5. Mr. Chilton proposes a 35% reduction. Ex. 2 to Chilton report. The court's careful review persuades the court that a 20% reduction is quite adequate to eliminate services relating to non-fee bearing claims. In other words, the court estimates that 80% (or more) of the services rendered in this case by plaintiff's' counsel "would necessarily have been incurred in connection with the fee bearing claim alone." *See*, discussion in the August 13 order, doc. no. 896, at 9. That adjustment is reflected in the above table (line 7).

E. <u>Adjustment to arrive at a final fee award which bears some reasonable relationship to the amount in controversy and the amount of the recovery</u>. The foregoing analysis reduces the fee from the $2.3 million originally sought to less than $1.1 million (line 8 in the table). Now comes the adjustment, mandated by Oklahoma law, to reflect the indisputably meager result ultimately obtained in this case.

At the hearing, Mr. Darrah fairly cogently (and, but for Oklahoma law, persuasively) articulated his reasoning in proposing that the fee should not be reduced to make it bear some reasonable relationship to the amount of the recovery. The problem is that Oklahoma law (unlike federal fee-award law in civil rights cases) admits of no exception for cases in which the final judgment vindicates a principle (here, the sanctity of trade secrets) but does precious little more than that. To the undersigned, a trade secret case, by its very nature, might actually have some of the attributes that cause us to be more indulgent in our approach to fee awards in civil rights cases. This is especially so where, as here, all of the defendants before the

court were found by the jury to have willfully and maliciously misappropriated a trade secret. *See*, doc. no. 464, at 6-7 (verdicts against Landon Speed, Baker Petroleum Investments, Inc. and Todd Baker). But, under Oklahoma's trade secrets act, the element of willfulness and malice expends itself in giving rise to the right to recover fees in the first instance. 78 O.S. 2011 § 89(3) (fee award not available absent a finding of a willful and malicious misappropriation). The court has found no authority for departure, in a trade secret case, from well-established Oklahoma fee-setting law. Consequently, the court must conclude that the recovery of "reasonable attorney's fees" authorized by § 89 is a recovery of fees to be set with a view to the relationship between the fee sought and the recovery ultimately resulting from the prosecution of the trade secret claim.

One more digression is appropriate. The history of this case demonstrates unmistakably that the amount genuinely in controversy (measured by, among other things, the result at the first trial) far exceeds the amount recovered.[3] A fair assessment of the facts of this case reveals a disparity so wide that giving significant effect to an "amount in controversy" reference point might well lead to a more generous fee award than an "amount recovered" reference point. Using the amount in controversy as a reference point would enable a plaintiff, asserting a potentially substantial claim in good faith, to be made whole where the jury agrees that the plaintiff has been wronged but is content to award very modest relief. (In that sense, a business tort case in which there is a significant *potential* for a large recovery may well differ conceptually from those civil rights cases in which there is a precious right to be vindicated even though there is not a high probability that a large damage award will follow.)

---

[3] This is also relevant to taxation of costs, as will be discussed in a separate order.

Some cases specifically refer to the amount in controversy. *E.g.*, Spencer v. Okla. Gas & Elec. Co., 171 P.3d 890, 895 (Okla. 2007) (stating that "[i]n all cases, the attorney fees must bear some reasonable relationship to the *amount in controversy*" but also citing, in the litany of Burk factors, "amount involved and *results obtained*") (emphasis added). The court's review of the Oklahoma cases persuades the court that although the amount in controversy, as distinguished from the actual recovery, is not altogether irrelevant in evaluating a prevailing party's fee request, the amount of the actual recovery is the primary reference point in determining whether and to what extent there should be a deduction from the lodestar fee to arrive at the final amount of the fee award. *See, e.g.*, Sw. Bell Tel. Co. v. Parker Pest Control, Inc., 737 P.2d 1186, 1188 (Okla. 1987) ("The question then becomes whether the award of $5000.00 is reasonable in light of the amount sued for *and recovered*." (emphasis added)). *See also* (citing Sw. Bell), Hall v. Globe Life & Acc. Ins. Co., 968 P.2d 1260, 1262 (Okla. Civ. App. 1998) ("Attorney fees must bear some rational relationship to the amount recovered."). The question of the amount of the fee to be awarded in relation to the amount of the recovery was discussed in more detail in the relatively recent case of Young v. Spencer, 405 P.3d 701, 709 (Okla. Civ. App. 2017):

> Rather than enhancing the lodestar fee, the trial court, clearly concerned that the lodestar fee amount exceeded the damages award, reduced the fee to $45,000 to bring it into alignment with the $45,800 awarded. There is no strict rule that the award of attorney fees may not exceed the amount of recovery. There are certainly cases in which the attorney fees exceeded the recovery. See Spencer, 2007 OK 76, 171 P.3d 890 (1.3 times the recovery) and Southwestern Bell Tel. Co. v. Parker Pest Control, Inc., 1987 OK 16, 737 P.2d 1186 (2 times the recovery). The factor in question is whether the fee bears a reasonable relationship to the results obtained.

In RJB Gas Pipeline Co. v. Colorado Interstate Gas Co., 813 P.2d 1, 13 (Okla. Civ. App. 1989), the Court of Civil Appeals quoted (with approval) as follows from Hensley v. Eckerhart, 461 U.S. 424, 435 (1983): "Where a plaintiff has obtained excellent results, his attorney should recover a fully-compensatory fee." Conversely, where, as here, the result is decidedly not "excellent," a fully-compensatory fee will not be awarded.

The net effect of the Oklahoma cases is that a fee determined by faithful application of the Burk protocol (and apportionment requirements) is still subject to one more screen: the fee awarded must bear some reasonable relationship to the actual recovery. The court concludes, consequently, that "a fully-compensatory fee" is precluded by Oklahoma law in this case. The ultimate outcome of this case on the merits of plaintiff's trade secret claim means that plaintiff will not be made whole, because plaintiff's fee award must be radically reduced to bring it more in line with the actual recovery.

As the table shows (at line 9), the court has reduced the lodestar (after required adjustments and apportionments) by ninety percent, which results in a ratio of the fee award to the judgment of 2.67.[4] Although the court does not intimate that there is any science in this, the court arrived at this result by approaching it from two directions: looking at what the final lodestar amount referable to the trade secret claim actually was ($1.07 million, per line 8) and looking at the amount of the final judgment ($40,000).

For the determination of the appropriate relationship between the amount recovered and the fee award, the Oklahoma cases provide useful guidance but they also (quite understandably) decline to impose hard upper and lower limits. On this

---

[4] This is .046 percent of the fees actually paid (the evidence at the hearing was to the effect that the fees incurred by plaintiff were in fact paid), and .067 percent of the Darrah lodestar.

9

score, the decision in Vance v. Enogex Gas Gathering, L.L.C., 393 P.3d 718 (Okla. Civ. App. 2016) is especially helpful because the court appended to its opinion the order of District Judge Richard G. Van Dyck in which he analyzed, for purposes of that case (which he described as having reached a "marginal result" in relation to the requested fee, *id.* at 726), the fee-related results of other cases. A condensed version of Judge Van Dyck's analysis is as follows:[5]

| Case | Damages | Fee Awarded | Ratio |
|---|---|---|---|
| Layman | 35,000 | 30,000 | 0.857 |
| Williams | 25,100 | 25,000 | 0.996 |
| Finnell | 26,000 | 17,005 | 0.654 |
| Arkoma | 100 | 5,500 | 55.000 |
| Hall | 25,222 | 20,000 | 0.793 |
| Catlin | 1,167 | 600 | 0.514 |
| Fowler | 185,625 | 138,054 | 0.744 |
| Valley View | 169,000 | 59,048 | 0.349 |
| Simmons | 143,800 | 57,500 | 0.400 |
| Layman | 35,000 | 30,000 | 0.857 |

Obviously, the outlier in Judge Van Dyck's survey was the Oklahoma Supreme Court's decision in the Arkoma case, Arkoma Gas Gathering Co. v. Otis Engineering corp., 849 P.2d 392 (Okla. 1993). Arkoma was a U.C.C. product liability case (breach of implied warranty, involving a failed drilling tool) between two commercial entities. The plaintiff sought to recover more than $70,000. The jury, unimpressed, returned a verdict for $100. Plaintiff then sought to recover a fee in excess of $23,000, arguing that the trial judge, in setting the fee, lacked the discretion to award less than the amount resulting from a straight-forward Burk lodestar determination (hour reasonably spent multiplied by a reasonable hourly

---

[5] The fee awarded by Judge Van Dyck was $50,000, which had a 1:1 ratio to the amount of the judgment. *Id.* at 727.

10

rate). There was "no real dispute" as to the hours spent or the rates charged. *Id.* at 393. The trial judge disagreed and awarded a $5,500 fee, 55 times the $100 recovery.

Plaintiff (not defendant) appealed, arguing again that the trial court erred in failing to award a fee based on a Burk lodestar determination and nothing more. The Supreme Court disagreed and affirmed the trial court's award of a $5,500 fee, concluding that the trial judge quite properly took into account the result obtained and did not abuse his discretion in awarding the $5,500 fee. The persuasive value of the Arkoma case is diminished somewhat because we do not know what the result would have been if the *defendant* had chosen to take issue with a 55:1 fee award against it. But, on that score, it is instructive that, in affirming the district court, the Supreme Court placed significant reliance on its decision in Southwestern Bell, discussed above, where it had concluded that a $3,000 fee was appropriate recompense for the effort involved in securing a $1,500 judgment (2:1 ratio).

The clear import of the Oklahoma cases dealing with a contention that the fee award must incorporate a result-related reduction is that the trial judge must have, and articulate, a rational basis for the amount of the reduction (if any) and the amount of the resulting award. In the case at bar, the $1.07 million fee (line 8) which the court would have awarded if the plaintiff had gotten a substantial recovery on its trade secret claim far exceeds the fee award which should reasonably flow–and be charged to the defendants by way of involuntary fee shifting–from a $40,000 recovery. The court's ninety-percent reduction results in a fee-to-judgment ratio of 2.67 to 1. In concluding that this ratio is in the reasonable range, the court takes into account the following considerations (in no particular order): (i) the prosecution of the claim on which plaintiff prevailed reasonably required a tremendous amount of work, far in excess of the work that is effectively compensated by a $106,992 fee award; (ii) as witness the result at the first trial, plaintiff's *potential* recovery justified a tremendous amount of work; (iii) defendants surely put plaintiff's attorneys

11

through their paces (albeit not in an abusive or unethical way) in getting the case to a final result after eight years of litigation; (iv) in the business world, the interest at stake in the claim which was successfully prosecuted–the sanctity of trade secrets– is not a trivial interest. The court is at pains to add that, in its evaluation of the meager financial result in relation to the fee to be awarded, the court does not take the approach it would take in a civil rights case (*see,* August 13 order, at 6, n. 4). But the fact that this case is not a civil rights case does not require the court to ignore altogether the fact that the interest at stake in plaintiff's trade secret claim is more than ordinarily important–and hence deserving of enforcement–in the business world. These are the reasons why the court awards a fee as high as it does.

The reason the court awards a fee as *low* as it does is self-evident.[6] The Oklahoma cases make it plain that, in the inverse logic of involuntary fee shifting where the result obtained is a factor, the losing defendants ought not to be forced to pay a Cadillac price for a Trabant, even when, all things considered, they have reason to be quite pleased with the Trabant.

---

[6] The court is unimpressed with defendants' suggestion that, because plaintiff asserted five claims and recovered on only one of them, the reduction to account for the meager result should be reckoned by awarding a fee equal to one-sixth of the amount of the judgment. Doc. no. 899, at 8. That proposal is derived from a case in which, as relevant here, the problem before the court arose from the fact that it was not possible to apportion between claims that were fee-bearing and claims that were not. (Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1553 (10th Cir. 1996) (district court awarded $30,000 where the compensable claim, resulting in a $90,000 verdict, was one of three claims litigated). For one thing, defendants' suggestion conflates claim apportionment (which was the central apportionment issue in Harolds, *id.* at 1553) with result-related adjustment, which was not involved in Harolds, at least in the sense being discussed in this order. The logic employed in Harolds (to rationally apportion among compensable and non-compensable claims) does not lend itself to a determination of a result-related adjustment. But, even taking the Harolds approach on its own terms, it does not apply here because the determination of the adjustment that is at issue here (making the fee award bear some reasonable relationship to the final result of the litigation) is not hindered by a lack of reliable evidence in the record.

**IV. Conclusion.**

Pursuant to 78 O.S. 2011 § 89(3), the court assesses a reasonable attorneys' fee against the defendants, Landon Speed, Baker Petroleum Investments, Inc. and Todd Baker, jointly and severally, in the amount of $106,992.  This award may be reduced to judgment on motion if not timely paid or superseded.  An order with respect to the pending matters relating to taxable costs will follow immediately.

Dated November 7, 2019.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

11-0649p008.docx